UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SASOF III (A2) Aviation Ireland DAC, et al.,<br><br>                                    Plaintiffs,<br><br>-against-<br><br>Air Senegal S.A.,<br><br>                                    Defendant. | 1:25-cv-05962 (VSB) (SDA)<br><br>**OPINION AND ORDER** |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Pending before the Court is a motion by Defendant Air Senegal S.A. ("Defendant" or "Air Senegal"), pursuant to the inherent power of the Court, for an Order temporarily staying this action based on the existence of parallel litigation commenced in Senegal by two of the Plaintiffs herein. (Def.'s 12/19/25 Not. of Mot., ECF No. 17.) For the reasons set forth below, Defendant's motion is GRANTED.[1]

**BACKGROUND**

**I.      The Lease Agreements And Breach Thereof**

On May 8, 2018, SASOF III (A2) Aviation Ireland DAC ("SASOF"), as lessor, and Air Senegal, as lessee, entered into two Aircraft Lease Agreements for Airbus model A319-111 aircraft: one for the aircraft bearing the serial number 2897 (the "2897 Aircraft"), and a second for the aircraft bearing the serial number 3078 (the "3078 Aircraft").[2] (Compl., ECF No. 1-1, ¶¶ 2, 16.) On

---

[1] Defendant's motion to stay is nondispositive and therefore within the scope of the general pretrial referral to the undersigned. *See Crane v. Poetic Prods. Ltd.*, 549 F. Supp. 2d 566, 568 (S.D.N.Y. 2008) (citing cases).

[2] These two Lease Agreements are referred to herein, respectively, as the "2897 Agreement" and the "3078 Agreement," and together as the "SASOF Agreements."

December 23, 2019, Aergen Aircraft Twenty One Limited ("Aergen 21"), as lessor, and Air Senegal, as lessee, entered into an Aircraft Lease Agreement for Airbus model A321-211 aircraft bearing the serial number 1921 (the "1921 Aircraft").[3] (*Id*. ¶¶ 3, 16.) Also on December 23, 2019, Aergen Aircraft Twenty Limited ("Aergen 20"), as lessor, and Air Senegal, as lessee, entered into an Aircraft Lease Agreement for Airbus model A321-211 aircraft bearing the serial number 1881 (the "1881 Aircraft").[4] (*Id*. ¶¶ 4, 16.)[5]

Each of the Agreements contained a provision in Section 20(b)(ii) regarding jurisdiction, as follows:

> Any suit, action or proceeding against any of the parties hereto with respect to any Lessee Agreement or in respect of any judgment entered by any court in respect thereof may be brought in the Supreme Court of the State of New York, City and County of New York and/or the United States District Court for the Southern District of New York, and each party hereto submits to the non-exclusive jurisdiction of such courts for the purpose of any such suit, action or proceeding; <u>provided</u>, however, that such courts shall have exclusive jurisdiction with respect to any claims against Lessor or Owner and that subject to the foregoing, any party may commence an action in any other jurisdiction to otherwise enforce a judgment issued by such courts. Nothing in this Section 20(b) shall affect the right of Lessor to bring any action or proceeding against Lessee or any of its property in the courts of other jurisdictions. Each party hereto hereby irrevocably waives any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to Lessee Agreement brought in any of the above mentioned courts in New York and hereby irrevocably waives any claim that any such suit, action or proceeding has been brought in an inconvenient forum.

---

[3] This Lease Agreement is referred to herein as the "1921 Agreement."

[4] This Lease Agreement is referred to herein as the "1881 Agreement," and together with the 1921 Agreement are referred to as the "Aergen Agreements." The SASOF Agreements and the Aergen Agreements collectively are referred to herein as the "Agreements."

[5] The 2897 Aircraft, 3078 Aircraft, 1921 Aircraft and 1881 Aircraft collectively are referred to herein as the "Aircraft."

(Ex. A to Compl., ECF No. 1-1, at PDF p. 82; Ex. B to Compl., ECF No. 1-1, at PDF p. 200; Ex. C to Compl., ECF No. 1-1, at PDF p. 320; Ex. D to Compl., ECF No. 1-1, at PDF p. 438-39.)[6]

Under each of the Agreements, in return for lease of the Aircraft, Air Senegal was required to make rent payments. (Compl. ¶ 17.) Failure to pay rent constituted an event of default under each of the Agreements. (*Id*. ¶ 22.)

Beginning in February 2024, Air Senegal failed to make required rent payments under all the Agreements. (Compl. ¶¶ 6, 29.) On March 20, 2024, SASOF, Aergen 20 and Aergen 21 sent a Notice of Default and Grounding to Air Senegal, demanding that Air Senegal ground all Aircraft by March 22, 2024. (*Id*. ¶ 31.) SASOF, Aergen 20 and Aergen 21 sent additional notices in May, June and July 2024. (*Id*.) On August 7, 2024, in light of the ongoing events of default under the Agreements, SASOF, Aergen 20 and Aergen 21 sent notices terminating the leasing of the Aircraft under the Agreements.[7] (*Id*. ¶ 32.) SASOF, Aergen 20 and Aergen 21 sent further notices of default following Air Senegal's continued use of the Aircraft and breach of the Agreements in September and December 2024 and January 2025. (*Id*. ¶ 38.)

---

[6] Each of the Agreements also contains a New York governing law provision in Section 20(b)(i). (*See* Ex. A to Compl., ECF No. 1-1, at PDF p. 82; Ex. B to Compl., ECF No. 1-1, at PDF p. 200; Ex. C to Compl., ECF No. 1-1, at PDF p. 320; Ex. D to Compl., ECF No. 1-1, at PDF p. 438.)

[7] Despite receiving the Notices of Default and Grounding and the termination notices, Air Senegal continued to operate the 1921 Aircraft and 3078 Aircraft on commercial flights until on or about September 2024 and March 2025, respectively, to its own benefit (Compl. ¶¶ 34-35), and continued to operate the 2897 Aircraft and 1881 Aircraft on commercial flights until June 23, 2025, to its own benefit. (*Id*. ¶ 36.)

## II.     The Senegal Court Proceedings

In order to protect their rights under the Agreements, SASOF, Aergen 20 and Aergen 21[8] sought intervention in the courts of the Republic of Senegal. (Compl. ¶ 39.) On March 21, 2025, SASOF and Aergen 20 applied for an order in the Dakar Commercial Court seeking the attachment of Air Senegal's bank accounts and assets based on Air Senegal's failure to pay rent for the Aircraft. (Tandian Decl. ¶ 3.) That order was granted on March 25, 2025. (*Id*. ¶ 4.)

On March 25, 2025, Aergen 20 initiated a second action seeking an order for the seizure of the 1881 Aircraft and the 1921 Aircraft[9] based on Air Senegal's failure to pay rent on such aircraft. (Tandian Decl. ¶ 5.) Also on March 25, 2025, SASOF III initiated a third action for the seizure of the 2897 Aircraft and the 3078 Aircraft based on Air Senegal's failure to pay rent. (*Id*.)

On April 2, 2025, the Dakar Commercial Court ordered the "precautionary attachment" of the 1881 Aircraft, the 1921 Aircraft, the 2897 Aircraft and the 3078 Aircraft, including an order for the grounding and seizure of the aircraft at Blaise Diagne International Airport. (Tandian Decl. ¶ 6.) This seizure never occurred due to Air Senegal's refusal to accept the seizure documents or allow the court-appointed bailiff access to the Aircraft. (*Id*.)

---

[8] As Plaintiffs' opposition memorandum notes, Aergen 21 is not a party to any of the proceedings in Senegal. (Pls.' Opp. Mem., ECF No. 25, at 5.) However, Aergen 21 is a party to the 1921 Agreement, which relates to the 1921 Aircraft, and the 1921 Agreement and 1921 Aircraft are at issue in the courts in Senegal. (*See* Tandian Decl., ECF No. 23, ¶¶ 2, 5-6, 13, 16; *see also* 1921 Agreement, Ex. C to Compl., ECF No. 1-1, at PDF pp. 262 to 379.) Aergen 21 is one of the Plaintiffs in this action and the Complaint filed by Plaintiffs in this action states that the "Plaintiffs" sought intervention in the Senegal courts "to protect their rights under the Agreements." (Compl. ¶ 39.)

As Plaintiffs' opposition memorandum further notes, the proceedings in Senegal include as a plaintiff CALF (A2) Aviation Ireland DAC ("CALF"), which leased to Air Senegal an aircraft bearing serial number MSN-55089. (*See* Pl.'s Opp. Mem. at 5; *see also* Ex. G to Compl., Schedule I, ECF No. 1-1, at PDF p. 514.)

[9] The record before the Court does not indicate why Aergen 20 initiated an action in Senegal regarding the 1921 Aircraft, since Aergen 21 was a party to the 1921 Agreement, not Aergen 20. *See* footnote 8, *supra*.

4

SASOF and Aergen 20 thereafter initiated two actions seeking orders for Air Senegal to pay certain rent arrears and interest. (Tandian Decl. ¶ 8.) First, on May 5, 2025, SASOF and Aergen 20 sought an order that Air Senegal pay $5,041,550.45 USD in rent arrears from September 2024 through February 2025, as required to obtain the attachment orders. (*Id*. ¶ 9.) On May 8, 2025, the Dakar Commercial Court granted this order. (*Id*. ¶ 10.) Air Senegal then challenged the order, and the objection as of January 12, 2026, remained pending before the Dakar Commercial Court. (*Id*.) On October 8, 2025, SASOF and Aergen 20 filed a second action seeking an order for unpaid rent between March 2025 through June 2025, totaling $4,217,399.68 USD. (*Id*. ¶ 11.) As of January 12, 2026, these two payment procedures remained ongoing before the Dakar Commercial Court and no rent had been paid to SASOF and Aergen 20 as a result thereof. (*Id*. ¶ 12.)

On May 7, 2025, SASOF and Aergen 20 sought an order for Air Senegal to immediately cease operation of and return the 1881 Aircraft, the 1921 Aircraft, the 2897 Aircraft and the 3078 Aircraft. (Tandian Decl. ¶ 13.) Air Senegal asserted that, under the Agreements, the Senegalese court did not have jurisdiction over the matter. (*Id*. ¶ 14.) In opposition, SASOF and Aergen 20 argued that jurisdiction did exist because, under the non-exclusive jurisdiction pursuant to Section 20 of the Agreements, the Senegalese courts had jurisdiction over the matter. (*Id*.) On December 29, 2025, the court ruled that, pursuant to Section 20 of the Agreements, which provides for the governing law and jurisdiction, Senegalese courts lacked jurisdiction over claims relating to aircraft redelivery. (*Id*. ¶ 15; *see* Ex. C to Archer Decl., ECF No. 24-3, at PDF pp. 2-3

(Dakar Commercial Court's website showing summary decision issued on December 29, 2025 by the Dakar Commercial Court).[10])

On June 11, 2025, SASOF and Aergen 20 filed a criminal claim against Air Senegal and its CEO for breach of trust related to Air Senegal's illegal possession of the 1881 Aircraft, the 1921 Aircraft, the 2897 Aircraft and the 3078 Aircraft. (Tandian Decl. ¶ 16.) On June 23, 2025, Air Senegal represented that the Aircraft would be available that day and "invited [SASOF, Aergen 20 and Aergen 21] to retake possession of the [A]ircraft at their current position and export them." (Compl. ¶ 51 (interior quotation marks and citation omitted).) All the Aircraft are back under control of SASOF, Aergen 20 and Aergen 21. (*See* Def.'s Reply at 11; *see also* Compl. ¶ 51; Ex. K to Compl., ECF No. 1-1, at PDF p. 565.)

Discovery is ongoing in the court proceedings in Senegal and the orders granted or denied to this point are interim orders subject to appeal. (Tandian Decl. ¶ 17.)

### III.   The New York Court Proceedings

On June 26, 2025, after the foregoing proceedings in Senegal had been initiated, SASOF, Aergen 20 and Aergen 21 (hereinafter collectively referred to as "Plaintiffs"), filed a Complaint in New York state court against Air Senegal "aris[ing] out of Air Senegal's failure to make required rent payments on [the Aircraft] leased to it by" Plaintiffs." (Compl. ¶ 1.) The Aircraft and the Agreements at issue in the Complaint are also at issue in the Senegal court proceedings, *i.e.*, the 2897 Aircraft, 3078 Aircraft, the 1921 Aircraft, the 1881 Aircraft, the SASOF Agreements and the

---

[10] As of January 23, 2026, according to Air Senegal, no full ruling had been issued by the Senegalese court setting forth the rationale for its jurisdictional ruling. (Def.'s 1/23/26 Reply, ECF No. 29, at 11.)

6

Aergen Agreements. (*See id*. ¶¶ 2-4.) The Complaint asserts causes of action for breach of contract, conversion and unjust enrichment. (Compl. ¶¶ 53-82.)

On July 21, 2025, the action was removed to this Court by Air Senegal. (*See* Notice of Removal, ECF No. 1.) On September 8, 2025, Air Senegal filed its Answer to the Complaint. (Def.'s Answer, ECF No. 7.) On October 14, 2025, an initial pretrial conference was held in this action and a Case Management Plan was filed. (Case Mgt. Plan, ECF No. 11.)

On December 19, 2025, Air Senegal filed the motion for a temporary stay that currently is before the Court. (*See* Def.'s 12/19/25 Not. of Mot.) On January 12, 2026, Plaintiffs filed their memorandum and declarations in opposition to the motion. (*See* Pl.'s 1/12/26 Opp. Mem.; Tandian Decl.; Archer Decl., ECF No. 24.) On January 23, 2026, Air Senegal filed its reply memorandum. (*See* Def.'s 1/23/26 Reply.)

## LEGAL STANDARDS

"A court has the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." *ArcelorMittal N. Am. Holdings LLC v. Essar Global Fund Ltd*., No. 21-CV-06975 (KPF), 2022 WL 4334665, at *21 (S.D.N.Y. Sept. 19, 2022) (quoting *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc*., No. 12-CV-07249 (PAE), 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013) (collecting cases)). "This prior pending action doctrine recognizes the 'principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency.'" *Id*. (quoting *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)). "At the same time, federal courts must be mindful of their 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Id*. (quoting *Colo. River Water Conservation Dist. v. United States*, 424

U.S. 800, 817 (1976)); *see also Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 191 (2d Cir. 2018) ("The general rule is that 'concurrent proceedings' regarding the same question are 'tolerat[ed].'" (citation omitted)). "By virtue of this obligation, '[f]ederal courts are reluctant to decline jurisdiction solely on the basis of concurrent proceedings in another jurisdiction.'" *Id*. (quoting *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F. Supp. 101, 103 (S.D.N.Y. 1997)). "As such, '[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction.'" *ArcelorMittal N. Am. Holdings LLC*, 2022 WL 4334665, at *21 (quoting *Royal & Sun All.*, 466 F.3d at 93 (emphases omitted)).

The Second Circuit directs district courts faced with a request to abstain because of a parallel foreign proceeding to consider a non-exhaustive list of factors, including:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*Royal & Sun All.*, 466 F.3d at 94 (citing *Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898-99 (2d Cir. 1999)). The task is to "assess[ ] . . . the totality of the circumstances," *Finova Cap. Corp.*, 180 F.3d at 900, "to determine whether the specific facts before [the court] are sufficiently exceptional to justify abstention." *Royal & Sun All.*, 466 F.3d at 94.

## **APPLICATION**

Considering the relevant factors and based on the totality of the circumstances, the Court finds that a stay is warranted, as discussed below.

### 1. Similarity Of Parties And Issues

The first two *Royal & Sun Alliance* factors—similarity of the parties and similarity of the issues—together determine whether the foreign and domestic actions are "parallel." "For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions." *Royal & Sun All.*, 466 F.3d at 94 (citing *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)); *see also Herbstein v. Bruetman*, 743 F. Supp. 184, 188 (S.D.N.Y. 1990) ("[C]omity requires that the parties and issues in both litigations are the same or sufficiently similar, such that the doctrine of *res judicata* can be asserted." (citation omitted)).

The parties in this action and in the Senegalese actions are substantially the same. That is, on the plaintiffs' side, SASOF and Aergen 20 are in the foreign and domestic actions, and Air Senegal is the defendant in the foreign and domestic actions. The fact that Aergen 21 is a party in this action, and not in Senegal, is of no practical consequence since, in Senegal, Aergen 20 is litigating Aergen 21's rights in respect of the 1921 Agreement and the 1921 Aircraft. (*See* footnote 8, *supra*, and accompanying text.) In addition, the fact that an additional lessor (*i.e.*, CALF) and an additional aircraft (*i.e.*, the aircraft bearing serial number MSN-55089) are at issue in Senegal (*see* footnote 8, *supra*), but not in this action, also is of no consequence, since the foreign proceedings involve all the Aircraft and all the Agreements at issue in this action.

The issues in the foreign and domestic actions also are substantially similar. Again, the proceedings in Senegal and this action involve the same four lease agreements and the same four aircraft. Moreover, in Senegal, as here, the plaintiffs are seeking past due rent. Plaintiffs argue that, "[i]n the Senegalese Proceedings, the Senegal Action Plaintiffs are ***currently*** seeking only

9

unpaid rent through June 2025, despite the unpaid rent continuing to accrue to date." (Pls.' Opp. Mem. at 6 (emphasis supplied).) However, Plaintiffs are silent as to whether they can amend their pleadings in Senegal to add a request for additional damages. While it is true that Plaintiffs in this action are seeking damages in excess of those sought in Senegal and are asserting additional legal claims (*see* Pls.' 1/12/26 Opp. Mem. at 11-12), the Court finds that the issues in the foreign and domestic actions are substantially similar. Accordingly, the first two *Royal & Sun Alliance* factors weigh in favor of a stay.

### 2. Order Of The Actions

The third *Royal & Sun Alliance* factor is the order in which the actions were filed. In the present case, the proceedings were filed by Plaintiffs themselves in Senegal before they filed the New York action. Thus, this factor weighs in favor of a stay.

### 3. Adequacy Of The Foreign Forum

The fourth *Royal & Sun Alliance* factor requires the Court assess the adequacy of the foreign forum. In its memorandum in support of its stay motion, Air Senegal persuasively argues that Senegal is an adequate forum. (Def.'s 12/19/25 Mem. at 13-14.) Air Senegal refers to Senegal's "robust and reliable civil legal system." (Ndao Aff., ECF No. 17-2, ¶ 6.) Plaintiffs acknowledge that adequacy of the foreign forum is a relevant factor to consider (*see* Pls.' Opp. Mem. at 10) and "Plaintiffs do not deny that Senegal may be an adequate legal forum." (*Id*. at 15.) Indeed, Plaintiffs themselves commenced multiple actions in Senegal regarding the Agreements and the Aircraft, thus implicitly acknowledging the adequacy of the forum. Accordingly, the Court finds that the fourth factor weighs in favor of a stay.

4. **Prejudice and Convenience**

The fifth and sixth *Royal & Sun Alliance* factors consider prejudice to either party in granting the request for a stay, as well as convenience to the parties and witnesses. The Court finds that neither party will be prejudiced by the granting of a stay. Plaintiffs assert that they would be "severely prejudiced" by a stay of this action in favor of the proceedings in Senegal due to the time it will take for resolution of the proceedings. (*See* Pls.' 1/12/26 Opp. Mem. at 15) This assertion rings hollow. Plaintiffs had the choice to file their action in New York, pursuant to Section 20(b)(ii) of the Agreements, and decided to file in Senegal instead. Plaintiffs "cannot be prejudiced by [their] own choice of forum." *Louis Vuitton N. Am., Inc. v. Schenker S.A.*, No. 17-CV-07445 (DLI) (PK), 2019 WL 1507792, at *9 (E.D.N.Y. Mar. 31, 2019); *see also Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, No. 12-CV-07249 (PAE), 2013 WL 2531277 at *5 (S.D.N.Y. June 10, 2013) ("It is disingenuous for [plaintiff] to argue now that [the foreign] court will proceed too slowly on the claims it filed there.").[11]

With respect to the convenience to parties and witnesses, Air Senegal persuasively argues that, "[b]ecause Air Senegal is the national carrier of Senegal, most of the documents and witnesses relevant to this dispute are in Senegal" (Def.'s 12/19/25 Mem. at 5), thus making Senegal "the more convenient forum." (*Id.* at 15.) Plaintiffs do not contend otherwise. In any event, with regard to convenience, it is material that Plaintiffs brought both the foreign action

---

[11] The Court also notes the potential prejudice to Air Senegal of litigating this case in New York caused by the Presidential Proclamation restricting the entry into the United States of Senegalese citizens. (See Def.'s 1/9/26 Not., ECF No. 22.)

11

and this action and originally chose Senegal as the forum. *See Louis Vuitton*, 2019 WL 1507792, at *9. Accordingly, the fifth and sixth factors weigh in favor of a stay.

### 4. Relative Connection to the United States and Senegal

The final *Royal & Sun Alliance* factors concern the litigation's relative connectedness to the foreign and domestic forums. This action has obvious and deep connections with Senegal. Air Senegal is the national air carrier of Senegal (*see* Hession Decl., ECF No. 17-3, ¶ 13), and this action relates to Aircraft leased by Air Senegal. On the other hand, the only connection to New York is that the Agreements in Section 20 state that they are governed by New York law, and provide for jurisdiction in New York courts. Since Senegal has a greater connection to this action, the final factors also weigh in favor of a stay.

\*       \*       \*

Because all the factors weigh in favor of a stay, the Court concludes that this case presents exceptional circumstances that warrant issuing a stay in the interest of international comity.

### CONCLUSION

For the foregoing reasons, Defendant's motion for a temporary stay is GRANTED. On April 30, 2026, and every 90 days thereafter, until the proceedings in Senegal have concluded, the parties shall file a joint letter regarding the status of such proceedings.

Defendant's Letter Motion seeking oral argument of the motion (*see* Def.'s 12/19/25 Ltr. Mot., ECF No. 18) is DENIED AS MOOT.

**SO ORDERED.**

Dated:          January 30, 2026
                 New York, New York

                                               _____
                                               **STEWART D. AARON**
                                               **United States Magistrate Judge**